We'll hear argument next in Case 10-637, Greene v. Fisher. Mr. Fisher. Thank you, Mr. Chief Justice, and may it please the Court. Any decision announced from this Court before a State prisoner's conviction becomes final constitutes clearly established law for purposes of applying Section 2254d of AEDPA. For decades, in fact, it has been a bedrock rule under Teague and Griffith that State prisoners are entitled to the benefit of decisions from this Court that come down before finality. And that rule has delivered fairness and clarity to an area that this Court has acknowledged previously lacked it. There is no compelling reason to chart a new course now. There is no doubt that AEDPA changed Federal habeas law in many important ways, but it did not change habeas law with respect to retroactivity, for under this Court's Mr. Fisher, we wouldn't have this problem, at least not in this case, if your client had sought cert, right? Because then presumably when his petition came before the Court, our normal practice would have been to GVR it, because the decision would come out the other way under Gray, right? If this Court had GVR-ed the case. No, if he had sought cert. We can't very well GVR it until he seeks cert, and I think it's kind of a glaring factual nuance to the case, Canova, that he didn't seek cert, and he also didn't seek State collateral review. I mean, if he had tried one of those or both of those, we probably wouldn't be here. Fisher, Let me take those one at a time, Your Honor. First with the GVR request. If he'd had counsel that would have advised him to seek cert, he may well have done it in this Court and may well have GVR-ed, but realized that this Court isn't bound to do that. This Court has discretionary jurisdiction, and I don't think this Court wants to take on the responsibility of deciding every single case that falls into a Twilight Zone situation. You're going to have cases like this one very well would have in light of what the Pennsylvania, the State filed in its own Supreme Court, wrapped up in procedural arguments, harmless error allegations, perhaps alternative straight grounds. And this Court often has decided that habeas is the better place to work that out, not GVR. Now, it may well have GVR-ed, but I don't think the Court wants to take on that responsibility. Now, let me. Breyer, Why? I mean, normally, a lawyer just looks to see what the docket is. And when there is a case that seems to affect his case, he asks for cert. In our practice, normally, since I've been here, is where it implicates a case, you hold it until the case is decided. Then the writing judge or other people look through it and see if, in fact, it really does affect it. And if it does, we GVR. I mean, as a practicing lawyer here, have you discovered instances where we fail to do that, do you think? Well, I can think of — let me take it one step at a time. I think there are cases that this Court doesn't GVR because they're so procedurally complicated, the Court leaves it. And, in fact, I can think of one case right now in California. After Melendez-Diaz, there was a case called Guyer that came out of the California courts that this Court held for Melendez-Diaz but did not GVR, in part because I think the State was making harmless error allegations there. And now the States of California are trying to figure out what to do in light of that. So that's just one example. Roberts, but normally, I think, if it looks like a mess procedurally or whatever, the normal assumption is you let the lower court figure it out, send it back. And I think the research is that in actually most cases in which we GVR, the Court reinstates the judgment below for one reason or another. But the idea that we parse through them carefully, I think if it's arguable, send it back and let the lower court sort it out. Fisherman, let me get back to Justice Breyer's question, though, with the assumption that if he has a lawyer, he's going to bring it up here. Of course, Mr. Green's right to appointed counsel under Pennsylvania State law ended when the Pennsylvania Supreme Court dismissed his case. Kennedy, let me ask this. There was a second half of the Chief Justice's question that you never got to, but since we're on the GVR, we'll have one more question on the GVR, at least. If you had sought, if you had been counsel, you're not, if you had been Green's counsel and you had sought cert from this Court, you would have sought cert to the supreme, the superior court of Pennsylvania, to the intermediate court, correct? Correct. I think that's right. Which indicates that that is the decision that's involved here. And once that decision becomes final, then you have a problem. If the protocol or the practice or the rules had been that you would seek cert to the Pennsylvania Supreme Court, then you might have had an argument about finality, but now you don't. But you can get to that later, because the Chief Justice had a second part of his question, which was collateral. Okay. So let me address that. So I don't think it is a given, Your Honor, that we would have been able, Mr. Green would have been able to bring this claim in the Pennsylvania State courts. The justices on, the judges on the Third Circuit disagreed about that and it's unsettled under Pennsylvania law. But what is clear is that you could. But Respondent said you could. Pardon me? Respondent, in their brief, said that if you had sought post-conviction relief in the State courts, then you could have argued Gray was the controlling decision, and they would have accepted that Gray. They do say that now, Justice Ginsburg, and all I can say is we checked as hard as we could to find an actual case in Pennsylvania in the procedural posture of somebody going back in a situation, and we haven't found one that either decides it or the State takes a position one way or the other. But there are many States. You don't have to dwell just on Pennsylvania, because there are States, we cite them in our brief, that would not let somebody like Mr. Gray go into State court. And, indeed, the amicus brief from the group of States, I think, is telling in its silence that none of the 12 States that sign on to that brief are willing to say you could bring a claim like this in collateral review in our own State court. Roberts, I appreciate your point that you may or may not have been able to bring it. My concern is that you have, I guess as someone put it, the perfect storm here. You have a person who did not file cert, and he could well have gotten relief if he had through the GVR process, and who did not seek State collateral review, and he could well have, you say probably wouldn't, the State said certainly would have, somewhere in there, at least he'd have a fair chance or a chance. But because he didn't seek cert and he didn't file State collateral relief, we have this more complicated scenario. Fisherman, I think that's a fair statement, Your Honor, and the way you frame it, though, frames what sounds to me more like an exhaustion argument than it does about a statutory construction argument with respect to 2254d. And this Court's never held either that you have to seek cert in this Court in order to exhaust State remedies, nor to take a claim back to State collateral review that you've already taken up through the State direct review system. So if we had an exhaustion case in the future, maybe somebody would make that argument. But that's not what's before you today. What's before you today is the hypothetical that Mr. Green actually did seek cert, and for some reason this didn't GVR, or he did seek review in the Pennsylvania courts, and they refused to hear it. And under the State's position, even then, you would bar him from getting the reliance on Gray, because Gray came down after the Pennsylvania Supreme Court — I'm sorry, the Pennsylvania Superior Court. Ginsburg. Apparently, the Pennsylvania Supreme Court thought that he hadn't properly raised it. I mean, they initially granted review post-Gray, and then they found that the grant was improvident, most likely because Green had not raised the Gray issue below. Well, he very much had raised the Gray issue below, Justice Ginsburg. You're absolutely right that the State, faced with really no alternative but to try to argue waiver, did argue waiver in the Pennsylvania Supreme Court, which did dismiss the case. But, of course, the order doesn't say why it dismissed the case. And we litigated that very issue in the lower courts. And the Third Circuit squarely held that Mr. Green had, in fact, preserved this claim in the Pennsylvania courts. And on top of that, the Pennsylvania Superior Court had reached it and resolved — understood him to be raising the Gray-type argument and resolved it by citing a Pennsylvania case that had previously held that just putting an X in place of — in place of the defendant's name was good enough to satisfy Bruton. Alito, how can you square your position with what 2254d says, that there must be an unreasonable application of clearly established law? What the intermediate appellate court did was not an unreasonable application or, let's assume for the sake of argument, it was not an unreasonable application of clearly established law when they did it. So how do you get around that? Kennedy, and just to follow up on that question, the statutory says it was adjudicated past tense and the decision resulted in past tense. Right. We don't disagree that it's a backward-looking statute. There is a retroactivity cutoff. The question is where is it? And we don't contend, Justice Alito, that it's an unreasonable application. We contend there's more statutory language that is contrary to clearly. You don't contend that what the non-punitive? There's two prongs. You said you don't contend that. And I didn't hear. Was there an unreasonable? I just didn't hear. Yeah. Justice Alito cited one prong of 2254, which is unreasonable application. The other is it was. I think the more natural. It was contrary to. How was it contrary to? It was contrary to this Court's clearly established law as of the date of finality. So you have a statute that says it has to be resulted in a decision that was contrary to the decision. Scalia, what decision did the Supreme Court of Pennsylvania make, other than the decision not to hear the case? No, it's the decision from the Pennsylvania Superior Court, Justice Scalia. That's contrary to clearly established law as of the date of finality. Not the date they made it. That's not the date they made it, no. But the question of contrary to, as this Court said in Williams and it's repeated many times, is whether the lower court either did one of two things, decided a case with a question of law and decided the question of law opposite as how this Court has decided it, or decided the case differently than this Court has in another case on materially indistinguishable facts. Well, how do you square your argument with Pinholster? Because I thought that the what we said in Pinholster just last year is no Monday morning quarterback. We put ourselves in the position of the court at the time. We look at what the court looked at. We know what the court knew. And we make a decision on that ground. And it seems to me that your argument just runs smack into that holding. Justice Kagan, no, we don't think it does, because there's always been a difference between facts and law. So this Court, of course, held in Pinholster that you look at the factual record that existed before the State court, but ordinary appellate review and principles have always allowed new law to be considered up to a certain point. And so it's consistent with Pinholster to say you take the set of facts, just as you would from a trial court, but that new law up to the point of finality is going to be considered. Kagan, I understand how there can be a distinction between facts and law for many purposes, but Pinholster rested on a view of the statute, which was basically the view that Justice Alito gave you, which said everything in this statute is framed in the past tense. What this statute is getting at is, is the decision at the time the State court made it. Again, we don't disagree at all that it's in the past tense. The question is where in the past is the cutoff. And so what we say is — and it's important what this Court did say in Pinholster. In Pinholster, it didn't say that the plain language of 2254d resolved this. It said that — I think I'm going to get this quote right — that the structure of the statute compelled the conclusion that for facts you leave the window. Well, the structure of this statute as to law compels the opposite conclusion. If you read the statute, it says adjudication resulted in a decision, and the decision, the only decision, is the Pennsylvania Superior Court, because there was a nondecision by the Pennsylvania Supreme Court, resulted that is in a decision that was, it didn't say is. I mean, you would have a much stronger argument if it had read resulted in a decision that is contrary, but when it says was, that sounds like at the time of the adjudication. Well, Justice Ginsburg, if I can get this point across, I'm not saying is, because then there would be no retroactivity cutoff whatsoever. I agree that the statute says was, but it's was as of when. We say was as of the time of finality. The State wants to read into the statute was as of the time the decision was made. So that's the question you have. And if you look to the structure of the statute, you'll see lots of clues that Congress didn't intend to change the previous clear retroactivity cutoff at Teague. And, of course, that's the barrier the State has to overcome here. The clear and specific change in law, if you look at the limitations provision, it references finality. If you look at various provisions of the statute that reference retroactivity law, they reference new rules and retroactivity. And this Court has held in Tyler v. Cain that Teague is what Congress had in mind when it did that. So how do you get past Horne? Horne says that Teague and Aetba are two different. Analyses that each case must undergo, that you start with, okay, what does Teague say, but you then look at what Aetba says, and that each can serve as an independent bar. So if that's the case, how do you get around Aetba's requirement of a past-looking statute being one that involves the adjudication and whether at its time it was contrary to Supreme Court precedent? Fisherman. Justice Sotomayor, we think Horne is another structural component of the statute that shows why we win. And let me explain why. Again, we don't disagree it's a backward-looking statute, but backward-looking to finality. Now, what Horne held, Horne rejected a form of the very same argument the State is making today, which is 2254d changes retroactivity law to establish the cutoff at the time of the State court decision, not as a finality. This Court rejected that argument and said, no, Teague and 2254d are distinct. And we think the best way to understand them as distinct is to understand that 2254d deals with the standard of review and Teague still continues to control finality. Now, in light of Horne — I'm sorry, retroactivity — now, in light of Horne on the books, if the State were right that what 2254d is actually trying to do is also do retroactivity work and prevent the State courts from, as it put it in its brief, being blindsided, then Teague would no longer serve any purpose and Horne would have had to come out the other way, because once you say 2254d is actually concerned with setting a cutoff at the time of the last State court decision for retroactivity purposes, you don't need Teague anymore. So Horne would have had to come out the other way if the State is right. Now, let me go back to one other structural feature of the statute to explain that shows that Congress had in mind that Teague would continue, and that's the one I referenced earlier with respect to retroactivity. Keep in mind, the State's argument would bar not just somebody like Green from relying on a new case like Gray, but it would also — the implication would be it would bar him from relying on a new case like Roper v. Simmons, Graham v. Florida, or other cases that alter — that say the Constitution can no longer cover or punish substantive conduct in a certain way, because, again, if Teague is out of the picture — Kennedy, of course, those are ongoing injuries where the person continues to be confined. I'm not sure there's an ongoing injury here. All we're doing is talking about a trial error. That's different than Roper v. Gray. Fisherman, it's not different under the State's view of AEDPA, Justice Kennedy. Remember, the State's view of AEDPA is that if a decision comes down after the latest State court decision on the merits, then the defendant cannot seek relief based on it. And on page 38 of the red brief in footnote 12, they try to deal with this problem, but not in a satisfactory way. And it's not an abstract problem. If I give this Court a few citations, if you'll permit me to give you three citations of cases working through the lower courts right now that raise Roper, Graham and Atkins' claims, that the lower courts, the only way they have reached them is by saying that Teague still has a role to play with respect to 2254d. And the three citations, if I can give them very quickly, are Arroyo, 362 F. Sepp 2nd, 869, Holliday, 331 F. 3rd, 1169, and Sims, 2011, Westlaw, 1161696. Again, that's another structural feature of the statute that the State simply can't get around with its view. Now, some of the lower courts haven't quite focused on this, and in fact, it's because for many, many years after AEDPA was passed, States didn't even make the argument that you have before you today. All the way through Smith v. Spisak, which came to this Court just a couple of years ago, the State of Ohio, for example, was not even making this argument, which is quite odd if you step back for a moment and realize that the State's position today is that the plain text of AEDPA is so clear there is no possible way you could read it in any other direction. So what about the purpose of AEDPA was to require the Federal courts to respect the State court's decision. And there's only been one decision in this picture, and that decision was the Pennsylvania Superior Court. And we are not giving much respect to that decision, which did not have the benefit of Gray, if we're going to say, no, we have to look at that decision as though Gray were already on the books. Fisherman. So, Justice Ginsburg, let me answer that question by starting, if I may, before AEDPA. Because before AEDPA, under Caspari and Teague, there's no doubt whatsoever that that's what a Federal habeas corpus court would have done, is say, the cutoff is finality, because remember, finality doesn't exist in a vacuum. It exists against the Griffith rule. And so what Federal courts had always asked is, did the defendant not get credit for a case that he's entitled to under Griffith? And so the question is, did AEDPA change that rule? And, Justice Ginsburg, you asked about the purpose or spirit of AEDPA. We think what the spirit of AEDPA is, is to give States deference and to give them comedy where they otherwise didn't have it at the time. And so it changed the standard of review. It changed statute of limitations. But it didn't need to change Teague. It didn't need to change retroactivity, because as this Court had explained in Teague itself, and Justice Kennedy's long opinion in Wright v. West concurring, the very purpose of Teague was to give States the comedy that of not having a statute hoisting new law upon them. And so you do end up, of course, in this situation, which is, I think we called it earlier, the twilight zone or perfect storm situation. But this is something that this Court saw coming under Teague and long ago, even though even under those cases this Court said the purpose of retroactivity law is not to hold the States responsible for something new. And so the question is, why did we have this twilight zone under Teague and why should it continue today? And the answer, again, is because Teague doesn't exist in a vacuum. It works in tandem with Griffith. Remember, what Griffith said is that it violates basic norms of constitutional adjudication for a defendant to not get the credit for a decision that this Court announces before his State conviction becomes final. And so Teague is necessary as the other side of the coin to make Griffith work. And to undo all of that and to go back to an unsettled state of retroactivity law, whether it's Linkletter or something else, is going to really cause problems. Let me just give you one other image that the States' situation. Ginsburg. I don't understand the problem. If you look at the Pennsylvania superior court decision and say, as of that time, the --"there was no violation of any clearly established law," period, why is that complicated? Here's why, Justice Ginsburg. Take the typical case, and maybe you'll put in your mind, for example, the Martinez argument you had last week. A typical case works its way through the State courts. There's going to be an appeal as of right in the State intermediate court where all of the claims the defendant brings can be addressed. Then what might happen quite often is the State supreme court is going to hear, like this Court does, maybe one or two of those claims and address them on the merits. Then he's going to go into State collateral review and bring an IAC claim, an ineffective assistance of counsel claim, and maybe whatever other claim he couldn't have brought earlier. Under the State's rule, you have three different retroactivity cutoffs for different claims that are brought and adjudicated at the different part of that regime. You have a retroactivity cutoff at the intermediate court for certain claims, a retroactivity cutoff at the Pennsylvania — I'm sorry, the State supreme court for certain other claims, and a retroactivity cutoff at finality for certain other claims. And we think that's just unwieldy. And not only that, it's just difficult. And Cullin, again, if you want to go after her.  It's not that the statute contemplates that. It refers to any claim that was adjudicated on the merits in State court proceedings. So naturally, you'd have a different result with respect to claims that were adjudicated on direct review and any claim that was pushed over to collateral review. Fisher It does tell you to go on a claim-by-claim basis. That's right. And that — therein lies the difficulty. With our system, you simply look at the date of finality for purposes of any claim being adjudicated on Federal habeas. Under the State system, you have to go claim-by-claim with different dates and have arguments, as this Court did in Pinholster, for example, about whether this claim is the same claim that was brought, or the State supreme court decided this claim, but not the other claim. Roberts' Well, I'm sorry, but I mean, my point is that it seems a pretty weak criticism of a result, that it requires you to go claim-by-claim when the statute specifically requires you to go claim-by-claim. The objection there, it seems to me, would have to be with Congress. Fisher I'm not objecting to the claim-by-claim nature of the approach. I'm just saying it would be unwieldy and administratively difficult, and therefore I think you can question whether Congress would have contemplated not just going claim-by-claim for purposes of adjudication, but for purposes of retroactivity analysis. And it just is going to create problems that I don't think anyone would argue, and I don't think the State has even contended, that Congress had any of this in mind when it passed it. Breyer I'm having trouble following it. It may be my fault, but the the the, suppose the Supreme Court has now some kind of interpretation of something that's new. Now, there are going to be a wide range of people that that might apply to, whose convictions became final or just about final in State courts at different times. So it's obviously always going to be somewhat unfair and somewhat arbitrary that it applies to some and not to others. So what is the problem here? What the reading of the statute on the other side says, I'll tell you who it applies to or who it doesn't apply to. It doesn't apply to people where the last Supreme State court decision was made before the Supreme Court made its decision. That's it. Now, that's arbitrary somewhat, but you have to cut and make a draw line somewhere. Fisher I think, Justice Breyer. Breyer What's the problem? Why is that complicated? Fisher You're right that there's a there's arbitrariness built into any cutoff. The State makes this point and it's brief. But by disjoining habeas law from Griffith, you're going to create a whole new level of arbitrariness that we think is undesirable and unnecessary. So, for example, in a situation like this, everything is going to turn on whether a State supreme court grants review and ultimately disposes an issue on the merits. And many State supreme courts might take the view that, well, hey, if the State supreme court has just decided this issue and we don't have any new law to make here, this isn't worth our time. So we're going to go. Breyer No, but the person would say, look, the State supreme court has you've been we're under a decision. You're the exact opposite of what the United States supreme court held. Will you please either take our case and hear it or at least send it back to the lower court? And wouldn't most State supreme courts do it? Fisher I think many State supreme courts do. I think there's possible two questions you asked. One is whether State supreme courts in that situation would themselves GVR back to the immediate court. Pennsylvania, by our estimation, doesn't seem to do that. And many State supreme courts don't do it. They don't have to do it. And again, you have the problem, if you're going to rely on somebody to bring the case up to this Court and say that's the only way that he can get benefit of the new decision, I think this Court, I know it's counterintuitive, but you're going to have to take a hard look, not just at fairness and equity, but at this Court's right to counsel jurisprudence and ask yourself whether somebody under the Halbert test who has a right to have a decision on the merits of that claim, and that's the only time it can be litigated, therefore has to have the right to counsel because he couldn't otherwise navigate the process. Kagan I don't understand that, Mr. Fisher, because you want to do this in Federal habeas where there's no right to counsel either. So what difference does it make? Fisher Well, there's at least a backup that doesn't exist today. I'm sorry, that wouldn't exist under the State's rule. And so the difference it would make would be he would have a second chance to bring the claim where if he brought it, the district courts often would appoint counsel. If I could reserve the balance of my time. Roberts Thank you, counsel. Mr. Eisenberg. Eisenberg Mr. Chief Justice, and may it please the Court. Every relevant word in the statute and every relevant precedent of this Court points to the same place, to the law as it existed at the time of the State court decision. That's the body of law that must be used in deference analysis. Now, Sotomayor One part of your argument that troubles me is what if those 12 States that don't have the right to collateral review, what do we do with the two Teague exceptions? Eisenberg Your Honor, as we addressed in our brief, footnote 12 as Petitioner referred, we believe that Teague exceptions clearly would survive review. And the reason for that is really a two-step process. Number one, in most States, and perhaps hypothetically there will be somewhere there where this isn't true, but Petitioner hasn't identified, has identified no more than two that I can see in his brief, in most States the defendant will receive review of the Teague exception on State collateral review. We want him, Edput calls upon him. Sotomayor Don't worry about the States that do. I asked, my hypothetical was assuming there are some that don't. Eisenberg Of course, Justice Sotomayor. As to those relatively few States that hypothetically might not, the defendant goes to Federal court, and because this is a Teague exception, and there are exceptions because they are exceptional, he has a number of existing habeas doctrines to rely on, cause and prejudice, actual innocence, inadequate State grounds, and he is quite likely in the Teague exception case to be able to get through the default of not having had an adjudication in State court, and he will have not only review in Federal court, but he will have de novo review in Federal court because there was no rule ruling on the merits. So not only will he have Federal court review, but it won't be deferential review in that circumstance. If the State did allow the review of the Teague exception, then he will have deferential review. And in fact, this question has been debated by the Court before. It came up at oral argument in Wharton v. Bockting. One of the amicus briefs in that case actually addressed the question empirically, looked at one of the most recent candidates for first Teague exception status, which was the mental retardation rule of Atkins v. Virginia, and in an appendix to the brief found that no State had barred review of the Atkins claim, even though it was not even officially declared yet to be a Teague exception. We think that that's what would happen with Teague exceptions. Of course, this case doesn't concern a Teague exception, and so really the only question here is whether a ruling in favor of the State would inadvertently determine that question for future purposes. I think our argument is adequate at least to show that the question remains live and can be safely left for another day. Alitoso, your answer is that the State in that situation, the State courts in that situation would entertain the claim, but what if they didn't? If they didn't, Your Honor, then the defendant can surmount whatever procedural bar that would constitute when he got to Federal habeas in the Teague exception case. How? By arguing, well, the most likely Teague exception would be a first exception, not the second exception, not the watershed rules, which are few and far between, if any still remain, to be discovered. That exception fits very neatly with the actual innocence. Kennedy, what's that, cause and prejudice? What's the fact that they're not? Actual innocence, Your Honor. Oh, actual innocence. Actual innocence, because the Well, we haven't decided whether actual innocence. Actual innocence, Your Honor, is well established as a way to get around a procedural default on Federal habeas. Well, that's well established as another issue. I don't mean actual innocence as being an independent, freestanding habeas claim. I mean as a gateway to merits review. That is well established. And the first Teague exception, by definition, deals with people who essentially didn't commit the crime. The nature of the exception is that the State did not have the constitutional power to make that a crime. But what if it was a case like Gideon v. Wainwright? That would be the watershed exception rule, Your Honor. Again, I believe that the States would generally and have empirically entertained those claims. If the State did not, I believe that the defendant would have the right to say that because of the watershed nature of the rule, the State's failure to entertain the claim was an inadequate State ground for blocking review in Federal court. And I think that would be an appropriate application of the doctrine. I think as Justice Kagan stated earlier, or suggested by her question, Pinholster really does resolve this claim, even in addition to the language of the case. Petitioner argues that facts in law are different, and they might be to some extent, but actually law is the easier question for the issue that's presented here. And Pinholster did not simply tell us that new facts couldn't be considered, but the premise of the decision was that since new law couldn't be decided, neither could new facts. The statute is phrased in the past tense, as the Court said. The entire statute is backward-looking. There was nothing about the statute that made it backward-looking. Roberts, I'm sorry, if I could just go back to your Pinholster point. Your friend makes the argument that, of course, in a typical appellate case, you don't go back and revisit the facts, but that appellate court is expected to apply the law at the time it renders its decision. So there is that distinction between law and facts that seems to cut in his favor. Well, Your Honor, the only decision that was rendered in this case did apply the law as it existed at the time. And in this case, it's clear, of course, that it didn't. Roberts, I'm talking more generally about the idea that Pinholster automatically applies to this situation. It applies to facts, therefore it applies to law. The distinction in that context between law and facts, the general context, strikes me as one that supports his argument, that they are at least not tied at the hip and have to be treated the same way. Your Honor, I think that Pinholster was somewhat more specific than that. It stated that the statute was backwards looking in its entirety, certainly with no exception for law. After all, D.1. is about law. It doesn't mention the word facts or evidence. It mentions only the word law, and the Court had to move from that to its decision about facts. Number two, in Pinholster, the Court specifically stated that it was relying on prior precedents, and it used the word precedent to describe the prior decisions, for the focuses on what a State court knew and did. State court decisions are measured against this Court's precedent as of the time the State court renders its decision. That was the jumping-off point, so to speak, for the Court's extension of the principle and effect that we're debating today to the area of new facts. And I don't think there's any way to reconcile that holding with the Petitioner's argument or with the language of the statute. Now, the Petitioner argues that this is necessary in order to give the defendant his rights under Griffith v. Kentucky, but as I think the Chief Justice's questions illustrate, he had those rights. He was entitled to seek review on direct appeal as long as it lasted of whatever new rules came out before the point of finality. He was entitled to seek discretionary review in the State supreme court. He was entitled to seek discretionary review in this Court.  Roberts, it's hypothetical, and I don't mean to give you an opportunity for a self-serving answer, but what would the State have done if he had filed a petition and said, my case is controlled by Gray, you, the supreme court, should grant, vacate and remand? Are you aware of situations where the State has agreed with such a request? Yes, Your Honor. In fact, we think that there are hundreds of cases in which the State supreme court has granted, vacated and remanded. I know Petitioner said that he would. No, no, I'm talking about your office's position in responding to a petition for cert. Have you ever said, yes, Gray controls, that's different, you, the supreme court? We see it. I'm not sure I've seen any cases like that other than this one, where this, as you said, perfect storm actually occurred. In this case, that's not what we said, and that's because we thought that there had been an affirmative abandonment of the method of redaction claim by the defendant. But if the State court, as it did here, decides not to grant review, then, of course, the defendant is free to come to this court. The point is that under Griffith, the defendant obviously doesn't have any more of a right than to go to the courts that are up the chain and which at a certain point exercise the section under Griffith. Kennedy, a constitutional case? Your Honor, I believe it was a constitutional interpretation, but that's a right that the defendant has. Kennedy, would the Congress of the United States have the authority looking at this case to direct Federal courts to issue habeas in this, on these facts? I think that the Congress could have written the AEDPA in order to allow review here, but I don't think that they did. Is that, then, a restriction on habeas corpus? I think that all of AEDPA is a restriction on habeas corpus, Your Honor. And in most cases, in most aspects of AEDPA, far more of a restriction than exists in this case. Is there a rule of constitutional avoidance that we should interpret the statute to avoid and a inference that there is a restriction on habeas corpus? No, Your Honor. I think it's clear from prior case law that the AEDPA does not constitute an unconstitutional restriction of habeas.  of habeas corpus. That's not argued, I agree. And I think it's clearly not. This is a relatively minor restriction on AEDPA review compared to the deference rule in and of itself, which the Court has characterized as a fundamental bedrock principle of AEDPA. While we're discussing on a different point, what response do you make to Mr. Fisher's point about Graham and Roper v. Simmons? Your Honor, if those kinds of cases amount to a Teague exception, then for the reasons that I've explained, I think that those will be subject to review on Federal habeas corpus. If they're not, if they don't meet the high standards. Do they meet the Teague exception? Your Honor, I don't know whether any particular new rule meets the Teague exception standards. Those are high standards and they should be. They're exceptional. But for the normal new rule, it's not a question of a new trial. It's just a question of looking at a continuing sentence and seeing the validity of a continuing sentence. I think there are certainly good arguments that those kinds of rules would not qualify as Teague exceptions, Your Honor. It's going to be a rare circumstance, and as I said, and the only one that even arguably in recent years would seem to fit well into the first Teague exception, that is the Adkins case, the State courts have allowed review. How does that happen if, let's imagine, Smith is convicted of some kind of disorderly conduct and he goes through the State courts and it's upheld, and then sometime thereafter, I leave vague how much time, maybe it's just a couple of months or something, the Supreme Court says that particular kind of conduct is protected by the First Amendment, so now it falls within the exception for you can't criminalize this. Now, habeas is filed. Smith files habeas. Well, how can he get that heard? Because this particular provision says that unless it was clear at the time under in your review of the State statute, final State decision on the matter, he can't get into habeas. Now, it wasn't clear. The defendant should go first to the State court once the new Teague exception is established, Your Honor, and if he doesn't, if he goes to Federal court first. Breyer, what about if he goes to State court under a collateral review? Suppose there is no such. Then I think we have Justice Sotomayor's question, Your Honor, and the answer is that in that case, the defendant can argue that the State's failure to provide review constituted a bar that he is allowed to circumvent by the existing doctrine. So this is quite far out, but conceivable. You would argue that in the State court, the State, you would have to go to collateral review on State court and argue that they now have to apply the new rule. Yes, Your Honor, and that's appropriate, because of course, AEDPA wants the State court to have the first chance to review. If the State court refuses to do so, then he can circumvent the bar. If the State court does so, then the State court's review on the merits of the new rule becomes the law that will be applied, the clearly established law that will be applied. Your Honor, I think it's important also to remember here that in the State court the fatigue has not been abolished by 2254. Its role has certainly been reduced, but that is true of many aspects of AEDPA. Ginsburg. What's left of it? What's left of it primarily, Your Honor, is the situation where there is no merits decision in the State court. And we just described one example of that in the Teague exception case where the State court refuses to provide merits review, but there will be many others where the State asserts a default and the defendant is able to overcome them through cause and prejudice, et cetera. In those cases, the defendant, for purposes of 2254, wouldn't be barred because there is no merits determination. But Teague might still bar him if the new rule on which he seeks review is one that came down after the point of finality. Teague is not a guarantee of rights to the defendant. Griffith was the guarantee of rights to the defendant, and the defendant received his Griffith rights. Teague is a bar to review. AEDPA is a bar to review. They are two separate bars that overlap to some degree, but work in different ways. Another example of a situation where Kagan And if it was the case that Congress supplanted Teague to the extent that you said it did, why is it, as Mr. Fisher said, that it took States upwards of 10 years to figure this out? Verrilli, Your Honor, I'm not sure I agree with that factually. In the Spesak case, for example, I don't know that it was necessary for the State to make that argument. The State thought it had a strong argument on the merits. That's exactly what happened in Horn v. Banks as well, Your Honor, which is a case that I think actually supports our position. In that case, the State court applied on collateral review the rule of Mills v. Maryland. Now, this Court later held in that same case that Mills was a new rule that would be Teague barred, but the State didn't know that at the time, and the State had a well-established body of law applying Mills, and thought the State court thought it could easily dispose of the claim on the merits of the Mills issue, so it did so. The case came to Federal habeas corpus review. It wouldn't have been barred. Review on the merits would not have been barred by 2254, because the State collateral review court applied Mills and made a merits determination. So the defendant would have been entitled to merits review under the deferential standard. The problem is Mills was a new rule, and so the independent bar of Teague comes into play. The Third Circuit refused to apply that independent bar. That's why this Court reversed in Horne v. Banks. And so it neatly illustrates another example of a situation where Teague actually does survive despite 2254. There are other doctrines that, based on this Court's case law, that have been overshadowed to an even greater extent than Teague was. Abuse of the writ, the Heaney v. Tamayo race concerning evidentiary hearings. Certainly Congress had the right to do that, and in fact, these issues were addressed to some degree, even in the Court's seminal deference case in Williams v. Taylor. In Williams v. Taylor, for example, it was Justice Stevens' position in dissent, arguing in dissent, that the statute really only embodied Teague. When the statute said clearly established all that Congress meant to do was to codify Teague, he said it was perfectly clear that that was the case. And he argued, particularly in footnote 12 of his dissenting portion of his opinion in Williams v. Taylor, just as Petitioner argues today, that the fact that Congress in other portions of AEDPA, particularly in section 2244, used language talking about finality of judgment and talking about retroactivity. The fact that Congress did that in 2244 meant that it was thinking about Teague and that it really meant to extend the Teague rule throughout the entire statute, that Teague really flavored the entire statute. The Court necessarily rejected that argument. And in fact, in reference to another prior case of this Court, Wright v. West, that had been argued by Justice Stevens in his dissent, Justice O'Connor, speaking for the Court, said, Congress need not mention a prior decision of this Court by name in a statute's text in order to adopt a rule. Now, I think that's clearly what Congress did, and I think that the Court clearly recognized in Williams v. Taylor that the deference rule, 2254, constituted a new rule which sat side by side with Teague and operated in different ways, even if in some cases, many cases, that would mean you never had to get to the Teague bar because the 2254 bar came into play first or more easily. If there are no further questions, I will rely on my brief. Thank you. Roberts. Thank you, counsel. Mr. Fisher, you have 4 minutes remaining. Fisher. Thank you. Let me make three points, starting with the most important, which is the Teague exceptions we have been talking about. Now, the State, in its brief, in footnote 12, in today, says actual innocence, cause and prejudice, or something, would let you get around the problem that I've raised. But that doesn't work, because all those doctrines do is allow you to bring the case forward. They just allow you to get out from under a situation where you haven't preserved a claim previously. But this case is all about a situation where the defendant does everything he's supposed to do, everything he can do, but it just so happens that this Court's decision on the merits and the State on collateral review has refused, if it's been given a chance, to remedy that. The three cases I cited to you, at least one of them involved a situation where the defendant did go back to the State. I believe it's a Graham case and said, apply this to me. The State of Virginia said, no, you're barred from State collateral review. So all those doctrines do is allow the defendant to get in the door. Once he's in the door, he still has to satisfy 2254d1, which says that no claim shall be granted, no habeas relief shall not be granted on any claim unless the language we've been talking about today. So the only way out of the problem that we've phrased is to say that Teague decides what is clearly established law, not the language of the statute itself under the State's reading of the statute. The second thing is, as to this Court's GVR practice, I don't think there's much doubt on the merits. Alitoso, if a claim under Graham is a different claim from any previous claim, doesn't that get you out from under it? Fisherman, Well, not if the State says that you're barred in its own claim. That would get you out from the problem of being able to get in the door, because what would happen in that situation is the State would say, this is waived because he didn't make it earlier. And then you go to the Teague, you go to the exceptions in AEDPA for new claims and whether actual innocence applies, et cetera. All those are merely gateways to the question of whether the defendant gets relief, which is controlled by 2254. Alitoso, but do you think that a case like Graham or Atkins applies only to those whose cases are pending on direct review at the time when the case is decided, or do you think it applies to others? Fisherman, I think it would satisfy one of the Teague exceptions. That's what the lower courts have all held. If it wouldn't, certainly the hypothetical Justice Breyer gave about the First Amendment would satisfy the Teague exception, and you'd have exactly the same problem. Alitoso, if a juvenile is sentenced to death prior to the decision, and I'm sorry, yes, you think it applies only if it comes down during that period? Fisherman, no. We think it applies any time afterwards, too, but that just makes the problem bigger than just a twilight zone. Breyer, it's not impossible to get out, because he says here, bring your collateral State. And now the collateral State, you're imagining, says, no, we can't have it because it's time barred. Fisherman, right. Breyer, then you go into habeas and you say the time bar is no good, and it's such an important opinion, you know, for all the reasons in Teague, that what they did is the time bar and they wouldn't hear it. Okay, so you hear it. And the claim is that they made a mistake, that State court that wouldn't hear it made a mistake in not hearing it and deciding it for me.  So now we have a State court thing to review. Fisherman, no, but that wouldn't be a decision on the merits, Justice Breyer. The decision on the merits would have been earlier in the proceedings when you argued I can't be executed because I was 17 when I committed the crime, and a State would have rejected that before Roper. And then you end up, after Roper, a State saying, we won't hear this on collateral review because we've already heard it once, and then we have the situation we have today, and the only way out of that situation is to understand that Teague continues to control what is clearly established law. And it's not just a problem. Again, it goes back to the structure of the whole statute, because the question this Court is supposed to be asking itself is, is there clear and specific language in the new statute to think that Congress wanted to dispense with Teague? And this is very clear indication that no, that's not what Congress had in mind. That's not what Congress had in mind. And so this is a case not just about habeas law, but also this Court's relationship with Congress about whether Congress clearly had the kind of intent that's necessary. Roberts. Thank you, counsel. Counsel, the case is submitted.